### THE BEATRICE BUSH.

(Circuit Court of Appeals, Second Circuit.   January 18, 1922.)

No. 122.

Collision ⊗═➤96—Tug held in fault for collision with ferryboat.

A tug, with a car float on each side, heading up the Hudson, *held* solely in fault for a collision between one of her floats and a meeting ferryboat, which she knew intended to enter a slip, for not sooner indicating her own course by signal, and for crossing the signal of the ferryboat for passing port to port, which was the proper passage indicated by the positions and courses of the two vessels.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the Central Railroad Company of New Jersey against the steam tug Beatrice Bush; the Bush Terminal Company, claimant. Decree for respondent, and libelant appeals. Reversed.

Macklin, Brown, Purdy & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for appellant.

Park & Mattison, of New York City (Samuel Park, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge.   The libelant, owner of the ferryboat Plainfield, libeled the Bush for damages sustained by it due to a collision with a car float in tow of the steam tug Bush a little above the entrance to the ferry slips of the Central Railroad Company of New Jersey on September 19, 1917, at about 4 p. m.   The Bush, having a car float on each side, was bound from Bush's Dock to the cement pier, which is the first pier above Pier No. 2, making the northern boundary of the ferry slips.   The ferry slips are numbered from 1 to 5; No. 1 being the upper or most northerly one.   The Plainfield had been moored to the upperside of Pier 2 and was out of service for some hours. She left the pier, and proceeded out into the river, in order to enter the ferry rack No. 4, intending to resume her service.   After stopping her headway off the Lehigh Valley float bridges, the Plainfield remained there for some little time with her engines stopped, awaiting the passing of a Lehigh Valley Railroad Company steam tug with car floats on either side.   This latter flotilla was bound into the Lehigh Valley float bridges.   This tow passed up the river between the ferryboat and the New Jersey side.

Another ferryboat, the Wilkesbarre, departed from ferry slip No. 4 and the Plainfield was waiting in order to enter this slip.   As the Wilkesbarre started to leave the slip, the steam tug Bush with her car floats on each side (being about 260 feet in length) was abreast of slip No. 4 and about half the length of the car float being above the slip. The distance between one ferry slip and another was estimated at about 75 feet.   After the Wilkesbarre left her slip, she passed under the stern of the Bush and her tow, and proceeded on her way toward

Liberty street, Manhattan. The Plainfield started ahead towards the ferry slip across the bow of the Bush and her tow, and gave a signal of one whistle to the Bush. It was apparent that when the Plainfield started her engines to go down the river, she was clear of the Lehigh Valley tow. Neither vessel interfered with the navigation of the two vessels concerned in the collision. As soon as the Lehigh Valley tow had cleared the Plainfield, the latter started up, and then observed the Bush head on head to her. She sounded a signal of one whistle.

We think the credible evidence warrants the belief that the Bush answered with a cross-signal of two, whereupon the Plainfield responded with a one-whistle signal and the alarm, but that the Bush, in response to her two-whistle signal then starboarded and came in toward the Jersey shore, and brought her port float into collision about amidships on the port side of the ferryboat. The collision occurred just below and inside the end of dock No. 2, and it was the forward port corner of the port car float which struck the ferryboat amidships on the port side. As the vessels thus locked together, they drifted down to about Dock No. 4, where they were separated.

We think the Bush was solely at fault, first, in not sooner indicating her intention by an appropriate signal; and, second, in answering the one-whistle signal given by the Plainfield with a cross-signal of two, and in starboarding and going in closer to the Jersey shore. The Plainfield had gotten under way, and the vessels being head to head, and about equally distant from the shore, the rule required a one-signal whistle and a port to port crossing. The Bush knew the Plainfield was waiting for the Wilkesbarre to pass, and also she knew that the Plainfield was not bound for New York, but was going back into the shore. It was evident that the Plainfield was a New Jersey Central ferryboat and would be bound for Jersey City ferryboat racks. There was nothing about the circumstances nor the signals given which would indicate that the Plainfield knew that the Bush was bound into the cement dock. The fact was that the Bush had one float consigned to this dock and another float for further up the river delivery. Her appearance on this side of the river indicated the customary course of vessels going up against the flood tide and proceeding straight up the river. Thus, the Plainfield was not bound to assume, especially in the absence of a signal, that the Bush was going into the cement dock.

We think the fault lay in the failure of the Bush in not sooner announcing her intentions, which she might have done by a whistle signal. The master of the Bush testified that he saw what the Plainfield was doing for about five minutes before, while the Bush was coming up against the tide. While the Bush denies that she blew a cross-signal, there is ample testimony to justify the belief in the Plainfield's claim. The physical facts support the claim of a cross-signal having been given. It was apparent that neither the captain, master, nor the lookout were attentive, or they would have seen the Lehigh Valley tug and the Plainfield sooner, and would have given a signal indicating the course the Bush intended to take. We think the Plainfield should be exonerated from fault and that the Bush should be held solely at fault.

Decree reversed.